UNITED STATES

v.

**Cedric J. MITCHELL, 219 92 3752, Aviation Machinist's Mate Airman Apprentice (E–2), U.S. Navy.**

**NMCM 92 0088.**

U.S. Navy–Marine Corps Court of Military Review.

15 Jan. 1993.

Maj G.S. Warner, USMC, Appellate Defense Counsel.

CDR Jerry D. Massie, JAGC, USNR, Appellate Defense Counsel.

LT E. Henriques, JAGC, USNR, Appellate Government Counsel.

Before FREYER, Senior Judge, and WELCH and MOLLISON, JJ.

MOLLISON, Judge:

The principal issue in this appeal concerns the providence of guilty pleas to specifications alleging violations of a state penal code, prosecuted at trial by special court-martial under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934, and the Federal Assimilative Crimes Act, 18 U.S.C. § 13.

Consistent with his pleas, the appellant was found guilty of one specification of violating a lawful general regulation by wrongfully possessing dangerous weapons, one specification of wrongfully possessing an unauthorized armed forces identification card, and two specifications of violating § 708–8200 of Hawaii Revised Statutes by committing cable television service fraud, all contrary to Articles 92 and 134, UCMJ, 10 U.S.C. §§ 892, 934. The violations of Haw.Rev.Stat. § 708–8200 were charged as Article 134 violations by their adoption as federal law through the Federal Assimilative Crimes Act, 18 U.S.C. § 13. Manual for Courts–Martial (MCM), United States, 1984, Part IV, ¶ 60c(4)(c)(ii). A military judge sentenced the appellant to confinement for 75 days, forfeiture of $502.00 pay per month for three months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the adjudged sentence, however, pursuant to a pretrial agreement, suspended confinement in excess of 30 days and forfeitures of pay in excess of $300.00.[1]

The appellant's case is now before this Court for review in accordance with Article 66, UCMJ, 10 U.S.C. § 866. This Court may affirm only such findings of guilty and the sentence or such part of the sentence as it finds correct in law and fact and determines on the basis of the entire record should be approved. Art. 66(c), UCMJ, 10 U.S.C. § 866(c). The appellant asserts seven errors were committed in the course of

---

1. We agree with the parties at trial that the provision in the pretrial agreement upon which this feature of the convening authority's action was based imports suspension of forfeitures in excess of $300.00 pay per month *for one month.* Record at 48–49. The convening authority's action shall be so interpreted.

his court-martial proceedings.[2] We may hold a finding or sentence incorrect on the ground of an error of law only if the error materially prejudices the substantial rights of the appellant. Art. 59(a), UCMJ, 10 U.S.C. § 859(a). We find no such error in the appellant's court-martial, and, with a minor modification, affirm the findings and the sentence.

The appellant's second assignment of error merits discussion. The remaining assignments of error do not. *United States v. Weiss,* 36 M.J. 224 (C.M.A.1992); *United States v. Graf,* 35 M.J. 450 (C.M.A.1992); *United States v. Burnette,* 35 M.J. 58 (C.M.A.1992); *United States v. Evans,* 35 M.J. 754 (N.M.C.M.R.1992); *United States v. Lowry,* 33 M.J. 1035 (N.M.C.M.R.1991).

Article 134, UCMJ, renders punishable at trial by courts-martial all neglects and disorders to the prejudice of good order and discipline in the armed forces and all conduct of a nature to bring discredit upon the armed forces. 10 U.S.C. § 934; MCM, 1984, Part IV, ¶ 60a–c. Article 134 also renders punishable at trial by courts-martial non-capital federal crimes. 10 U.S.C. § 934; MCM, 1984, Part IV, ¶ 60c(4). The Federal Assimilative Crimes Act provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in [18 U.S.C. § 7, defining the special maritime and territorial jurisdiction of the United States], is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13.

Haw.Rev.Stat. § 708–8200 provides that a person commits the felony of cable television service fraud if the person knowingly distributes a cable television device and knows that the device is intended to be used to obtain cable television service without the payment of applicable charges. In specifications 2 and 3 of Charge IV, the

2. I. THE PROVIDENCE INQUIRY FAILS TO ESTABLISH THE PROVIDENCE OF APPELLANT'S GUILT TO SPECIFICATION 1 OF CHARGE I, VIOLATING ARTICLE 1159, U.S. NAVY REGULATIONS.

II. THE MILITARY JUDGE FAILED TO CONDUCT AN ADEQUATE PROVIDENCE INQUIRY INTO THE TERMINAL ELEMENT OF THE OFFENSES ALLEGED UNDER SPECIFICATIONS 2 AND 3 OF CHARGE IV.

III. THE COURT–MARTIAL WAS ERRONEOUSLY PRESENTED INFORMATION THAT APPELLANT WAS REQUESTING A BAD CONDUCT DISCHARGE CONTRARY TO THE ADVISE OF TRIAL DEFENSE COUNSEL.

IV. AN UNSUSPENDED BAD CONDUCT DISCHARGE IS AN INAPPROPRIATELY SEVERE PUNISHMENT UNDER THE CIRCUMSTANCES OF APPELLANT'S CASE.

V. THE FORCE JUDGE ADVOCATE HAS NOT PROVIDED, AND THE CONVENING AUTHORITY HAS NOT CONSIDERED, APPELLANT'S AWARD OF A THIRD SEA SERVICE DEPLOYMENT RIBBON, WHILE ATTACHED TO A COMMAND DIFFERENT THAN THE CONVENING AUTHORITY'S [FOOTNOTE OMITTED], WHICH IS PLAIN ERROR, DISREGARDING THE MINIMAL INFORMATION THAT THE CONGRESS, THE PRESIDENT AND THE SECRETARY OF THE NAVY REQUIRED FOR AN INFORMED CLEMENCY DETERMINATION ON APPELLANT'S CASE. AS CLEMENCY MATTERS, NOT LEGAL ERRORS, THIS COURT MAY NOT SUBSTITUTE ITS JUDGEMENT FOR THAT OF THE CONVENING AUTHORITY. [CITATIONS AND FOOTNOTE OMITTED.]

VI. NEITHER THE COURT–MARTIAL NOR THIS COURT HAS JURISDICTION BECAUSE THE MILITARY AND APPELLATE JUDGES' LACK OF A FIXED TERM OF OFFICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. [CITATION OMITTED.] BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A *KNOWING* WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL.

VII. APPELLANT'S COURT–MARTIAL AND THIS APPELLATE COURT LACK JURISDICTION BECAUSE THE MILITARY AND APPELLATE JUDGES, CERTIFIED PURSUANT TO ARTICLES 26(b) AND 66(a), UCMJ, WERE DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. [CITATIONS OMITTED.]

appellant was charged with this crime under Article 134, by means of the state statute's adoption into federal law by the Federal Assimilative Crimes Act, 18 U.S.C. § 13.

The appellant pled guilty to these two specifications. Before the military judge accepted the appellant's guilty pleas, he conducted the requisite guilty plea providence inquiry. Rule for Courts–Martial (R.C.M.) 910, Manual for Courts–Martial, United States, 1984. During that inquiry, the appellant advised the military judge that he ordered by telephone five cable television "descrambling" devices from a firm in California; that the devices were sent to him at his barracks in Hawaii by United Parcel Service; that he paid approximately $240.00 for the five devices; that these devices were capable of being installed on cable television service lines in order to decode the scrambled, unviewable signal of premium television cable channels, such as HBO, Cinemax, and Showtime, and thereby view them without paying the applicable charges; that on 17 October 1991, on board Naval Air Station Barbers Point, Hawaii, he sold two of the devices for $100.00 each to two other sailors for the purpose of installation on cable television service lines; that the appellant knew the sailors intended to install the devices in order to decode the scrambled signal of premium television cable channels, and thereby view them without paying the applicable charges; and, that the appellant had in fact instructed the sailors how to "hook it up so they could." Record at 22–29. The appellant candidly admitted, "It was a lot cheaper that way." Record at 28.

The military judge also informed the appellant that in order for him to be guilty of this Article 134 offense, his conduct must be prejudicial to good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces. Record at 23. The appellant admitted the accuracy of this element. Record at 29. The military judge went on to quiz the appellant as to how he felt it might constitute such conduct. The appellant allowed that his conduct was prejudicial to good order and discipline because he "broke the rules" and

because it was "deceitful to the company that was trying to make money." The appellant also hoped that the same conduct was not service discrediting, but he allowed that it might be. *Id.* The appellant now challenges the providence of his guilty pleas, claiming the inquiry was inadequate as to the conduct-prejudicial/service-discrediting element of these offenses.

■ A Court of Military Review will not reject a plea of guilty unless there is on the record a substantial basis in law or fact for questioning the guilty plea. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991); *United States v. Newsome*, 35 M.J. 749, 751 (N.M.C.M.R.1992). Facially, the providence inquiry does not raise a question as to the guilty plea in respect to this particular element. Moreover, the appellant was charged with a "clause 3" Article 134 violation—federal crimes not capital. He was not charged with violating Article 134 "clause 1" (conduct prejudicial to good order and discipline) or "clause 2" (service-discrediting conduct). Therefore, an inquiry into this element was superfluous. *United States v. Sadler*, 29 M.J. 370, 374 (C.M.A.1990); *United States v. Irvin*, 21 M.J. 184, 189 n. 9 (C.M.A.1986).

■ The alleged offenses present another problem, however. "For areas 'under the exclusive or concurrent jurisdiction' of the United States, the Assimilative Crimes Act incorporates the penal laws of the State in which that area is located." *Irvin*, 21 M.J. at 186. A federal prosecution for a violation of a state penal code incorporated by virtue of the Federal Assimilative Crimes Act "is not for the enforcement of the state statute but for the enforcement of the Federal law." *United States v. Rowe*, 13 C.M.A. 302, 32 C.M.R. 302, 310 (1962). *See also United States v. Craig,* 19 M.J. 166, 169 (C.M.A.1985); *United States v. Sellars*, 5 M.J. 814, 815 (A.C.M.R.1977). However, the Federal Assimilative Crimes Act adopts state law as federal law, provided federal criminal law, including a specific punitive article of the UCMJ, has not defined an applicable offense for the misconduct committed. *Williams v. United States*, 327 U.S. 711,

66 S.Ct. 778, 90 L.Ed. 962 (1946); *Irvin*, 21 M.J. at 188; *United States v. Picotte*, 12 C.M.A. 196, 30 C.M.R. 196 (1961); MCM, 1984, ¶ 60c(4)(c)(ii).

■ A federal criminal law, the Cable Communications Policy Act of 1984, 47 U.S.C. § 553(a), (b), amending the Federal Communications Act of 1934, appears to proscribe the precise conduct alleged in these two specifications and described in the providence inquiry.[3] *See generally United States v. Coyle*, 943 F.2d 424 (4th Cir.1991). *Inter alia*, this federal legislation was intended to address the practice of individuals' gaining access to premium movie channels and sports channels without paying for the receipt of those services. H.R.Rep. No. 934, 98th Cong., 2d Sess. 83 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720. "[It] is primarily aimed at preventing the manufacture and distribution of so-called 'black boxes' and other unauthorized converters which permit reception of cable service without paying for the service." 1984 U.S.C.C.A.N. at 4721. Therefore, because federal criminal law defines an applicable offense for the misconduct committed, the misconduct was not punishable at trial by court-martial under Haw.Rev.Stat. § 708–8200 and the Federal Assimilative Crimes Act.[4]

Reversal under these circumstances is not, however, required if the elements of the correct statute are otherwise covered and if the variance did not mislead the appellant to his prejudice and did not affect his substantial rights. *United States v. Dawkins*, 7 M.J. 720 (A.C.M.R.), *pet. denied*, 7 M.J. 468 (C.M.A.1979); *United States v. DiGiulio*, 7 M.J. 848 (A.C.M.R.), *pet. denied*, 8 M.J. 167 (C.M.A.1979). Here, the specifications fairly informed the appellant that he was to defend himself against unauthorized reception of cable television service, they allege expressly or by necessary implication all the essential elements of proof of the offense, as defined in 47 U.S.C. § 553(a), (b)(1), the appellant's admissions covered a violation of 47 U.S.C. § 553(a), (b), and the appellant is protected against future prosecutions for the same offense. *See United States v. Smith*, 8 M.J. 522, 525 (A.C.M.R.1979); MCM, 1984, Part IV, ¶ 60c(6)(b). Accordingly, his conviction of these offenses will not be reversed. We will, however, modify the findings to reflect a violation of the Cable Communications Policy Act, vice a violation of the Hawaii penal code and the Federal Assimilative Crimes Act.[5] Such a modification will have no bearing on the maximum

3. § 553. UNAUTHORIZED RECEPTION OF CABLE SERVICE

(a) UNAUTHORIZED INTERCEPTION OR RECEIPT OR ASSISTANCE IN INTERCEPTING OR RECEIVING SERVICE; DEFINITION

(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

(2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

(b) PENALTIES FOR WILLFUL VIOLATION

(1) Any person who willfully violates subsection (a)(1) of this section shall be fined not more than $1,000 or imprisoned for not more than 6 months, or both.

(2) Any person who violates subsection (a)(1) of this section willfully and for purposes of commercial advantage or private financial gain shall be fined not more than $25,000 or imprisoned for not more than 1 year, or both, for the first such offense and shall be fined not more than $50,000 or imprisoned for not more than 2 years, or both, for any subsequent offense.

4. Appellant's conduct also appears to violate another provision of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605(a), (e)(4). *See Oceanic Cable Vision, Inc. v. M.D. Electronics*, 771 F.Supp. 1019 (D.Neb.1991). We need not address whether the appellant's conduct also violated the federal Wiretap Law. 18 U.S.C. § 2512(1)(b). *Compare United States v. Splawn*, 963 F.2d 295 (10th Cir.1992) *with United States v. Herring*, 933 F.2d 932 (11th Cir. 1991).

5. By modifying the findings to reflect a violation of the Cable Communications Policy Act, vice the Federal Assimilative Crimes Act, we need not address the issue whether the conviction could also be sustained on the basis that it is closely-related to some Clause 1 or Clause 2 Article 134 offense. *Sadler*, 29 M.J. at 375;

authorized punishment or appellant's guilty pleas. *See* R.C.M. 1003(c).

The findings of guilty as to Specifications 2 and 3 of Charge IV are modified to reflect findings of guilty of a violation of 47 U.S.C. § 553(a), (b)(1), vice a violation of Haw.Rev.Stat. § 708–8200 and 18 U.S.C. § 13. As thus modified, the findings and sentence as approved on review below are affirmed.

 For the future, when an accused pleads guilty to an Article 134 offense alleging a violation of a penal code adopted as federal law by virtue of the Assimilative Crimes Act, we advise military judges: (1) to ensure there are explicit, informed admissions by the accused on the record as to the federal legislative jurisdiction (e.g., exclusive or concurrent) of the federal enclave in question,[6] and (2) to obtain from counsel their assurances that they have conducted a diligent search of federal criminal law, including specific punitive articles of the UCMJ, and that an applicable offense for the misconduct committed is not defined therein.

Senior Judge FREYER and Judge WELCH concur.

*United States v. Hubbard,* 28 M.J. 203 (C.M.A. 1989); *United States v. Epps,* 25 M.J. 319 (C.M.A. 1987); *Irvin,* 21 M.J. at 189–90; *United States v. Williams,* 17 M.J. 207 (C.M.A.1984); *United States v. Felty,* 12 M.J. 438 (C.M.A.1982); *United States v. Mayo,* 12 M.J. 286 (C.M.A.1982).

**6.** *See* 18 U.S.C. § 7 and MCM, 984, Part IV, ¶ 60c(4)(c)(ii). *See also United States v. Geary,* 30 M.J. 855 (N.M.C.M.R.1990).